The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. On June 15, 1990, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment when she accidentally fell resulting in injuries to her lower back and left leg. The parties thereupon entered into an Agreement for Compensation for Disability, Form 21, which was approved by the North Carolina Industrial Commission on July 25, 1990. Pursuant to the Form 21 Agreement and an Amendment to the Form 21 Agreement dated July 20, 1990, the plaintiff had an average weekly wage of $343.33 which yields a compensation rate of $228.90. Pursuant to the provisions of the Form 21 Agreement, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and Liberty Mutual Insurance Company was the workers' compensation insurance carrier on the risk. The Form 21 Agreement is incorporated in this Opinion by reference.
2. Defendants have paid temporary total disability compensation to the plaintiff at the rate of $228.90 per week from June 18, 1990 through the date of the initial hearing.
* * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. On June 15, 1990, the plaintiff was employed by defendant-employer and suffered an injury to her lower back and left leg resulting from her accidental fall from a conveyer while working at her job with defendant-employer. Plaintiff's leg was struck by a pallet at the time of her fall, and she received two fractured vertebrae in her lumbar spine and a contusion to her left leg which ultimately required a surgical procedure.
2. Plaintiff was initially treated conservatively by Dr. Daniel E. Gentry, a general practitioner of Thomasville, North Carolina, and thereafter referred to Dr. David B. Ross, an orthopedic surgeon of High Point, North Carolina.
3. Dr. Ross first saw the plaintiff on July 16, 1990 and continued as the primary treating physician for plaintiff up to January 22, 1991. At that time, Dr. Ross released plaintiff as having reached maximum medical improvement, even though he felt that she had not fully recovered from her injuries.
4. Dr. Ross diagnosed the plaintiff as having suffered a significant hematoma to the left lateral leg segment and an L-1 compression fracture and lumbosacral contusion. Dr. Ross rated the plaintiff with a 15 percent permanent partial disability to her back (dorsal lumbar spine) and a ten percent permanent partial disability to her left leg due to persistent pain, skin hypersensitivity, local numbness, and intermittent swelling with prolonged standing.
5. As of January 22, 1991, Dr. Ross was of the opinion that the plaintiff could return to light-duty work that allows her to alternately stand and sit at regular intervals and does not require any lifting of over 15 pounds or repetitive bending or stooping. Dr. Ross further opined that it would be difficult for Ms. Messer to return to work under any other circumstances.
6. Prior to releasing plaintiff as of January 22, 1991, Dr. Ross, on September 5, 1990, cleared the plaintiff to return to work with defendant-employer with physical restrictions that she be able to sit frequently, have minimal bending and stooping, no twisting and no lifting of more than ten pounds. On September 11, Dr. Ross received a telephone call from an employee of defendant-employer who stated that the plaintiff had returned to work that day and had worked under Dr. Ross' physical restrictions but was unable to manage physically. Dr. Ross was told that the supervisor saw increased swelling in her leg and could feel muscle spasms in her back. Plaintiff was taken off the job on that day and has not returned to work as of the day of the hearing.
7. On October 11, 1990, Dr. Ross saw the plaintiff and noted that she had developed an abscess in the area of her hematoma which required hospitalization at High Point Regional Hospital on October 12, 1990 to perform a complete debridement on the abscess. Subsequent to this procedure, Dr. Ross placed plaintiff in a walking cast on her left leg to facilitate healing in the area of the abscess. On November 21, 1990, plaintiff was again seen by Dr. Ross with diffuse pain in her left leg and persistent lower back pain. At that time, he referred her for sympathetic blockages and physical therapy.
8. On February 25, 1991, Charles Brockman, a licensed physical therapist, of Piedmont Physical Therapy, performed a Work Capacity Evaluation on the plaintiff during which he assessed the plaintiff as being unable to perform any job that required bending or stooping or the lifting of over ten pounds. Additionally, he felt that she would need a job where she could sit, take frequent breaks and that required her to work only four hours a day.
9. On December 9, 1991, Charles Brockmann visited defendant-employer's Plant D to evaluate jobs that defendant-employer had available for the plaintiff. He was shown three jobs and felt that only the finishing room repair-operator job would meet his and Dr. Ross' physical limitations test with the following modifications:
 (a) The work station be raised to allow her to stand without bending at the waist.
(b) A suitable chair be accessible for rest periods.
 (c) She have assistance in lifting anything over 10-15 pounds.
 (d) She be allowed to begin work part time and add hours as tolerated.
The defendants have indicated that they would be agreeable to negotiating other modifications to the job in the event it became medically necessary. Furthermore, defendants have offered this job to the plaintiff, but the plaintiff has rejected the job and indicates that she is permanently and totally disabled and unable to return to work.
10. On February 6, 1992, the defendant-carrier submitted its Form 24 based on the plaintiff's rejection of the offered job. The Industrial Commission denied such request on February 10, 1992.
11. Plaintiff was born on March 21, 1933 and completed the ninth grade in school. Plaintiff's previous jobs include working for 17 years as a laborer in a hosiery mill and as a laborer in a cotton mill. Both prior jobs were unskilled.
12. Although plaintiff contends she is unable to do the job that defendant-employer has offered her, the undersigned does not find this testimony to be credible or convincing because the record demonstrates that the plaintiff is not motivated to return to work rather than is incapable of working at any employment. On December 17, 1990, Dr. Ross noted that "she is very resistant to consider any type of return to work and asked me today about disability and impairment." In a letter to Liberty Mutual Insurance Company dated May 9, 1991, Dr. Susanne Keddie indicated that plaintiff did not appear to be significantly depressed nor was she currently taking any medications. Dr. Keddie further noted: "She appears markedly well adjusted, and in view of her already determined disability, has no motivation to return to any type of work at any time in the future." W. Thomas Thompson, a licensed practicing psychologist, noted in his initial psychological evaluation of May 8, 1991: "She states that she is unable physically to return to work. She reports that she is active, exercising, and already coping satisfactorily . . . She is very content with her daily routine. . . ." The foregoing statements to the health providers convincingly indicate to the undersigned that plaintiff considered herself to be disabled, despite the fact that Dr. Ross had indicated she could do light work, and that she was satisfied with her situation and did not desire to return to work in any form. Also, plaintiff's vocational expert testified that plaintiff never requested him to assist her with a job search.
13. Plaintiff contends that the employment offered by defendant-employer is not suitable to her physical capacity and does not establish that the plaintiff has the ability to earn wages, relying on the testimony of William H. Haney, a vocational rehabilitation counsellor. The undersigned does not find the testimony of Mr. Haney to be persuasive for the following reasons: It is noted above, the plaintiff did not request that he assist her to find a job and he made no effort whatsoever to do so. It appears that Mr. Haney was employed by the plaintiff's attorney to assist him in establishing a case of permanent and total disability as reflected in counsel's letter to Mr. Haney dated February 14, 1992. While acknowledging that there would be significant numbers of light, unskilled jobs in her labor market and some sedentary, unskilled jobs in her labor market, he did not know how many such jobs exist in Davidson County. Furthermore, he, himself, admitted that identifying the labor market, identifying types of jobs that exist, and trying to assist a person to return to work is actually the best field test, and that none of that was done in this case. In addition, it does not appear that plaintiff's vocational expert has considered that plaintiff has been offered work by defendant-employer.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff has failed to sufficiently or convincingly establish that she is permanently and totally disabled or otherwise entitled to continuing temporary total disability pursuant to G.S. 97-29. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
2. Plaintiff is capable of returning to light-duty work with defendant-employer who has offered her employment and was capable of some work as of January 22, 1991, the date of maximum medical improvement. The employment that has been offered by defendant-employer is reflective of her ability to earn wages and this case is distinguishable from People v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798 (1986).
3. By reason of plaintiff's injury by accident and the fact that she is able to return to light-duty work but not full work on a regular eight-hour basis, plaintiff is entitled to receive compensation pursuant to G.S. 97-30 as of the date of this Opinion and Award should she elect to do so in lieu of her permanent partial disability ratings.
4. As to the plaintiff's permanent partial disability, should she elect to receive her rating in lieu of any temporary partial disability pursuant to G.S. 97-30, she shall be entitled to the payment of permanent partial disability compensation pursuant to G.S. 97-31 and specifically entitled to the payment of 45 weeks of compensation for the 15 percent permanent partial disability to her back and 20 weeks of compensation for the ten percent permanent partial disability to her leg.
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Commencing with any work done on January 22, 1991, or afterwards, the defendants, subject to a counsel fee hereinafter allowed, shall pay to the plaintiff compensation benefits pursuant to the provisions of G.S. 97-30, namely 66 2/3 percent of the difference between the plaintiff's average weekly wage before the injury and the average weekly wage which she is able to earn after she returns to work.
2. In the alternative, plaintiff may elect to, at this time, receive her permanent partial disability ratings in lieu of the award provision in Paragraph 1. If plaintiff elects this alternative, defendants shall pay to plaintiff 65 weeks of compensation at the rate of $228.90 per week as a result of plaintiff's ten percent permanent partial disability to her leg and her 15 percent permanent partial disability to her back. Plaintiff shall notify the Industrial Commission and defendants of any election made between G.S. 97-30 and G.S. 97-1.
3. A reasonable attorney fee in the amount of 25 percent of the compensation awarded herein is approved and allowed for plaintiff's counsel. (Said attorney fee shall be paid directly to plaintiff's counsel by the payment of every fourth check of compensation should plaintiff elect to return to some type of employment and thus receive temporary partial disability compensation).
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same have been submitted through the defendant-carrier to the Industrial Commission and approved by the Commission.
5. Defendants shall pay the costs.
This the __________ day of ________________________, 1994.
 S/ ______________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________________ JAMES J. BOOKER COMMISSIONER
S/ ______________________________ DIANNE C. SELLERS CHIEF DEPUTY COMMISSIONER
JHB/nwm